**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MARIA MORALES-MARTINEZ a/k/a Dalia Espinoza, <br><br> Defendant. | Case No. 19-cr-1013-CJW <br><br> **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS INDICTMENT AND/OR SUPPRESS EVIDENCE** |

## I.   INTRODUCTION

The matter before the court is Defendant's Motion to Dismiss Indictment and/or Suppress Evidence filed on June 18, 2019 with a supporting brief. (Docs. 13, 13-1.) The Government filed its resistance and opposing brief on June 25, 2019. (Docs. 14, 14-1.) The matter came on for hearing on July 17, 2019. The Court received Defendant's Exhibits A-D and Government Exhibits 1-2. Neither party offered testimony. The Court heard arguments of the parties. This matter is fully submitted.

## II.   FINDINGS OF FACT

Defendant was indicted on May 8, 2019 on two counts: Count 1, unlawful use of an identification document in violation of 18 U.S.C. Section 1546(a); and Count 2, misuse of a social security number in violation of 42 U.S.C. Section 408(a)(7)(B).

Defendant was formerly employed at Agri Star Meat and Poultry, LLC ("Agri Star") in Postville, Iowa. (Doc. 13-2.) She was hired in September 2016 and fired on

1

December 19, 2018.  (*Id.*)  Following the termination of her employment on February 26, 2019, her civil attorney mailed a "confidential settlement communication" raising complaints of pregnancy discrimination, harassment, and retaliation and seeking reinstatement or compensation in exchange for settlement of her claims.  (*Id.* at 4.)

On March 12, 2019, Homeland Security Special Agent Michael Fischels received an unsolicited call from Agri Star's human resources department with a tip that an employee known as Dalia Espinoza had previously worked for Agri Star under the name Leticia Alvarez.  (Doc. 13-3 at 2.)  Agri Star also supplied a Form I-9, State of Iowa W-4, and a Federal W-4 for Dalia Espinoza, as well as a Form I-9 for Leticia Alvarez.  (*Id.*) It appears that Agent Fischels reviewed the forms provided by Agri Star and then commenced his own investigation by conducting credit history checks; contacting other law enforcement agencies; contacting family members; and conducting surveillance; as well as reviewing immigration records, Facebook posts, and photographs.  (*Id.* at 2-5.) Agri Star also confirmed a match between photographs of Leticia Alvarez and Dalia Espinoza.  (*Id.* at 4.)

At the same time, it appears Agent Fischels was also conducting an investigation of Mario Gonzalez.  This led to Agent Fischels's receipt of a police report from the Postville, Iowa Police Department describing a domestic altercation involving Mario Gonzalez and Maria Guadalupe Morales Martinez.  (Doc. 13-4 at 2.)  Agent Fischels was able to then opine that Defendant was the person who had used the identities of Leticia Alvarez and Dalia Espinoza.  (*Id.*)

> The Government's brief asserts the following statements are facts:
>
> In early 2019, HSI Special Agent (SA) Michael Fischels was visiting Agri-Star Meat and Poultry, LLC, in Postville, Iowa, on an unrelated matter. During the course of his visit, SA Fischels learned from a human resources (HR) manager that a former employee named Dalia Espinoza had previously worked at the company under the name Leticia Alvarez. SA Fischels advised the manager that he would look into the matter if they sent

> him documentation. The manager also mentioned something about a letter
> Espinoza sent to the company, but she did not provide any details about the
> contents of the letter, the complaint, or reasons behind the letter.

(Doc. 14-1 at 2.) The evidence adduced at the hearing, however, did not establish all of the facts asserted by the Government in its brief; i.e., that Agent Fischels obtained the tip in person, the details of who relayed the tip to him, or his knowledge of a letter Defendant sent to Agri Star. Nevertheless, even if I accept these statements as admissions by the Government showing somewhat greater involvement by Agri Star in the underlying investigation than is disclosed by the exhibits in evidence, these alleged facts do not alter my report or recommendations.

### III. DISCUSSION

#### A. *The parties' arguments*

Defendant seeks to dismiss the indictment as a vindictive prosecution. In the alternative, Defendant asserts the Court should dismiss the indictment or "suppress all evidence obtained directly from the employer's illegal retaliation under either the Court's supervisory role or substantive due process." (Doc. 13-1 at 7.)

In resistance, the Government points to the heavy burden a defendant bears in establishing a vindictive prosecution and argues there is an absence of evidence of such vindictiveness. The Government also asserts, in essence, that Defendant has failed to establish state action; i.e., that the vindictiveness, if any, is attributable to the Government rather than Agri Star. The Government asserts Defendant faces the same criminal punishment as other similarly situated defendants accused of these crimes, that the possibility of punishment cannot support a claim of vindictive prosecution, and that the circumstances objectively justified the charges. The Government argues the fact that Defendant reported domestic abuse does not make Agent Fischels's actions vindictive and did not require the Government to "ignore her criminal activity." (Doc. 14-1 at 11.)

*B.     Motion to Dismiss for Vindictive Prosecution*

    **1.**     *The Government's actions do not amount to vindictive prosecution.*

Federal Rule of Criminal Procedure 12(b)(1) authorizes a pretrial motion to present "any defense, objection, or request that the court can determine without a trial on the merits." "A motion is capable of pretrial determination 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity' of the motion." *United States v. Turner*, 842 F.3d 602, 604-05 (8th Cir. 2016) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). A motion to dismiss for vindictive prosecution alleges a defect in instituting the proceedings and must be made before trial. Fed. R. Crim. P. 12(b)(3)(A)(iv).

The Eighth Circuit has described the heavy burden a defendant bears in establishing vindictive prosecution:

> Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. *United States v. Leathers,* 354 F.3d 955, 961 (8th Cir. 2004). Such prosecution constitutes a violation of due process. *Id.* The defendant has the burden to demonstrate that the "prosecution was brought in order to punish [him] for the exercise of a legal right," and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is "a heavy one." *Id.* Williams argues that the prosecution sought to punish him for exercising his legal right to a trial when the government filed the five-count superseding indictment following Williams' refusal of the government's plea deal.
>
> A defendant can establish prosecutorial vindictiveness through two methods; first, with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." *United States v. Chappell,* 779 F.3d 872, 879 (8th Cir. 2015) (internal quotation omitted). "Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *Id.* (alteration in original) (internal quotation omitted). In determining whether the

4

presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." *Id.* at 880 (quotation omitted).

*United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015).

> To establish an actual vindictive motive, a defendant must prove objectively that the prosecutor's charging decision was a "direct and unjustifiable penalty," *United States v. Goodwin,* 457 U.S. 368, 384 & n. 19, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), that resulted "solely from the defendant's exercise of a protected legal right," *id.* at 380 n. 11, 102 S.Ct. 2485. *See also Johnson,* 171 F.3d at 140–41. Put another way, the defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) [the defendant] would not have been prosecuted except for the animus." *United States v. Koh,* 199 F.3d 632, 640 (2d Cir. 1999) (internal quotation marks omitted).

*United States v. Sanders*, 211 F.3d 711, 716–17 (2d Cir. 2000).

Defendant's novel application of the vindictive prosecution defense to the facts of this case presents several problems. I find it unnecessary to address every reason that Defendant's claim of vindictive prosecution might fail. Here, the most obvious reasons will suffice. At the July 17, 2019 hearing, Defendant acknowledged that nothing in the record established Agent Fischels knew that Defendant had asserted any claim against Agri Star. As mentioned above, the Government's brief asserted Agent Fischels learned from Agri Star's human resource manager that Dalia Espinoza had previously worked at the company under the name Leticia Alvarez. (Doc. 14-1 at 2.) The assertion in the Government's brief that the tip came from Agri Star's human resource manager was not established at the hearing. Nor was the assertion that Agent Fischels had heard about a letter from Defendant's lawyer, but not its content. Nevertheless, even if I accept as facts that Agri Star's HR manager made the tip and that Agent Fischels knew about a letter but not its contents, this still does not establish that Agent Fischels knew Defendant

had asserted a claim against Agri Star. If Defendant cannot establish that Agent Fischels even knew of her claim, she cannot establish that he pursued the prosecution vindictively in response to her assertion of that right.

Title VII of the Civil Rights Act of 1964 prohibits retaliation against employees who assert their rights to be free of employment discrimination. 42 U.S.C. § 2000e-3(a). Even if Agent Fischels's conduct was in some sense retaliatory, despite the absence of supporting evidence, it is far from clear that punishing her for exercising a right to complain under the anti-retaliation provisions of Title VII could form the basis of a vindictive prosecution defense to a criminal prosecution. At the hearing, Defendant pointed to certain cases cited by Defendant's civil attorney for the proposition that it could be retaliation to threaten Defendant with immigration consequences or report her to immigration authorities as a result of her complaint. (Doc. 13-2 at 3 n.2.) For example, in *Arias v. Raimondo*, an employee complained of Fair Labor Standards Act violations. 860 F.3d 1185, 1192 (9th Cir. 2017.) *Arias* held an employer's attorney could be held liable for retaliation when he reported the employee to immigration authorities. *Id*. In turn, other courts have cited *Arias* and other decisions for the proposition that "threatening or contacting immigration services in retaliation for filing FLSA claims against an employer [is] an adverse employment action under the FLSA anti-retaliation provision. *Valle v. Beauryne Builders LLC*, No. CV 17-274-SDD-RLB, 2018 WL 1463692, at *4 (M.D. La. Mar. 23, 2018) (citing *Arias*, 860 F.3d at 1192; *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003); *Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F. Supp. 2d 1180, 1185 (N.D. Cal. 2000)).

These cases may establish that a third party retaliates under the FLSA by contacting immigration authorities in response to an employee's complaint. The Eighth Circuit Court of Appeals has not addressed the issue. I have not located any case that

has held a threat of or an actual report to immigration authorities constitutes retaliation under Title VII. I will assume, without deciding, that such acts could be retaliatory under Title VII, as other courts have held under the FLSA. Nevertheless, even if the acts of Agent Fischels or the Government could be construed as retaliatory under Title VII (or, perhaps, even that they conspired with Agri Star to retaliate), Defendant's argument fails to build a bridge to the next necessary conclusion. She cites no authority for the proposition that a vindictive prosecution defense may founded upon retaliation against her for exercising her right to complain of employment discrimination.

Defendant relies upon *North Carolina v. Pearce*, which held, "[I]t would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside." 395 U.S. 711, 723–24 (1969) *overruled by Alabama v. Smith*, 490 U.S. 794 (1989). *Pearce* protected the defendant's right to appeal or collaterally attack his first conviction. Defendant also relies upon *Blackledge v. Perry*, which protected the defendant's right to appeal against vindictive prosecution. 417 U.S. 21 (1978). Therefore, the defense of vindictive prosecution appears to protect a defendant's rights within the criminal justice system; i.e., within the realm of where the prosecutor has discretion and thus the ability to punish a defendant by abusing it. Defendant cites no case where, for example, a vindictive prosecution defense was based on the violation of the First Amendment right to free speech, or, more specifically, Title VII rights to complain of discrimination. On this record, I need not speculate whether the assertion of such a "protected legal right" not directly related to a criminal prosecution can form the basis for a vindictive prosecution defense. As discussed herein, there is no evidence to support that the Government or Agent Fischels acted out of vindictiveness or retaliated against Defendant for exercising any right.

Defendant has offered no evidence that would establish the prosecutor harbored any animus toward her. Defendant's arguments and evidence related solely to the actions of Agri Star and Agent Fischels and in no way point to the prosecutor who obtained the indictment. (Doc. 2.) Moreover, there is no evidence whatsoever that the prosecutor was "prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *Koh*, 199 F.3d at 640. The only possible animus Defendant has hinted at is from Agri Star. At this juncture, Defendant has only offered speculation regarding Agri Star's motivation in presenting a tip to Homeland Security. Defendant admits there is no evidence that Agent Fischels knew of Defendant's claims of discrimination. Defendant has offered no evidence of Agent Fischels's animus or even a reason he might bear such an animus toward her. Instead, Defendant accuses Agent Fischels of dereliction of his duty to investigate Agri Star's immigration practices without establishing the source or existence of that duty or citing any authority supporting the proposition that such dereliction would substitute for genuine animus. Defendant conceded at the hearing that the record contains no evidence to establish the source or nature of Agent Fischels's alleged duty to make a further investigation of Agri Star.

More importantly, even if Defendant had shown Agri Star or Agent Fischels bore animus toward Defendant, she has produced no evidence showing how either of them prevailed upon the prosecutor to bring the indictment. In addition, she has failed to show that the charges would not have been brought except for the animus. Even if Agent Fischels should have scrutinized the motives of Agri Star, as Defendant claims, there is no evidence that the prosecutor did anything other than present the evidence it believes establishes the charges to the grand jury. (Gov. Ex. 1-2; Docs. 14-2, 14-3.)

*United States v. Chappell* held,

> Because a vindictive prosecution "claim asks a court to exercise judicial power over a 'special province' of the [President and his delegates to enforce the law]," "'[t]he presumption of regularity supports' their

prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties,'"

779 F.3d 872, 880 (8th Cir. 2015) (internal citations omitted). In this case Defendant has not met her heavy burden to rebut the presumption of regularity that attends the decision to prosecute her.

The evidence does not show prosecutorial vindictiveness under either approach discussed in *Williams*. 793 F.3d at 963-64. First, there is no objective evidence that the prosecutor obtained the indictment in order to punish Defendant for exercising her right to complain of employment discrimination. Second, the circumstances surrounding the investigation and the issuance of the indictment do not establish a reasonable likelihood of vindictiveness, so no presumption of vindictiveness is warranted. The fact that the indictment was issued after the alleged retaliation is insufficient. "[T]iming alone is insufficient to trigger the presumption of vindictiveness. *United States v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005). Indeed, "[a] presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness." *Id*. The fact that Agent Fischels knew about a letter from Defendant but not the content does not help her show such a presumption. Moreover, there is no evidence that the prosecutor did anything other than pursue charges justified by the facts presented. As in *Williams*, Defendant "provides no evidence—aside from the timing—to show the context of the proceedings present a reasonable likelihood of vindictiveness, and thus [the defendant] fails to meet [her] heavy burden to establish prosecutorial vindictiveness." 793 F.3d at 963-64.

*C.     The Court's supervisory role and substantive due process*

Defendant argues, in the alternative, that the Court should dismiss the indictment or suppress evidence "either under the Court's supervisory role or substantive due process." (Doc. 13-1 at 7.) Defendant first relies upon the supervisory role of the courts to exclude evidence illegally obtained as discussed in *McNabb v. United States*, 318 U.S. 332 (1943). *McNabb* excluded statements obtained by U.S. Marshals from defendants who had been questioned at length and had not been immediately brought before a U.S. judicial commissioner or officer as required by a statute then in effect. *McNabb* excluded the evidence based on "exercise of its supervisory authority over the administration of criminal justice in the federal courts. *Id*. at 341. *Anderson v. United States,* decided the same day as and relying upon *McNabb,* involved state, rather than federal, agents who illegally detained and interrogated the defendants in violation of state law. 318 U.S. 332, 345 (1943).

In the case at bar, Defendant asserted that "a hearing on this matter would show that the bad faith employer was working with HSI Agent Fischels" and that this court "can safeguard the purposes of employment discrimination laws by refusing to admit evidence obtained in violation of the retaliation statutes." (Doc. 13-1 at 9.) The evidence ultimately did not bear out this assertion. I need not determine whether the Court's supervisory authority extends to the exclusion of evidence that may have been obtained in violation of Title VII's prohibition against retaliation. The facts do not show that either bad faith on the part of Agri Star or that Agri Star was "working with" Agent Fischels. At most, Defendant has established (if the Court considers the statements in the Government's brief) that a human resources manager from Agri Star tipped off Agent Fischels to Defendant's possible misuse of identification documents. It is possible that a human resources manager would know about a demand letter like the one from Defendant's lawyer to Agri Star's lawyer. (Doc. 13-2.) However, there is no evidence

that this human resource manager knew about Defendant's claim or, more importantly, that its contents were relayed to Agent Fischels. Defendant has not established retaliation by Agri Star let alone by prosecutors, law enforcement officers, and perhaps other state actors who are within the supervisory authority mentioned in *McNabb*. Defendant has not cited any decision holding that the Court's supervisory authority extends to private entities such as Agri Star or its employees.

Because Defendant cannot establish Agent Fischels knew of her complaint, she cannot establish that he retaliated against her or that the prosecutor was somehow caught up in the retaliation. *See Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (absence of knowledge of prior protected activity eliminates causation); *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1080 (8th Cir. 2010) (no retaliation where reviewers were unaware of complaints.) Nor has the Defendant shown that Agent Fischels or any government official conspired, colluded, or even assisted Agri Star in retaliating against her. Thus, Defendant has not established retaliation by Agent Fischels or the Government.

In addition, Defendant has not shown that any evidence was obtained by a violation of Defendant's rights or by someone within the Court's supervisory power. In essence, Defendant asks the Court to assume that Agri Star violated her right to complain about employment discrimination. The fact someone from Agri Star provided information to Agent Fischels after Defendant's complaint does not, without more, establish retaliation.

Finally, Defendant alleges the Court should suppress evidence because the Government's "collaboration with a retaliating employer violates [Defendant's] rights to substantive due process under the Fifth Amendment." (Doc. 13-1 at 9.) Defendant relies upon cases of outrageous government conduct such as *United States v. Marshank* in which the government collaborated with the defendant's attorney to build a criminal case against him. 777 F. Supp. 1507, 1519 (N.D. Cal. 1991). In this case, Defendant did not

11

establish any such outrageous conduct or collaboration on behalf of Agent Fischels or the prosecutor, as previously discussed. I need not speculate on whether the protections against retaliation under Title VII and the right to substantive due process under the Fifth Amendment could provide a basis to dismiss an indictment or suppress evidence. For the reasons set forth above, Defendant has failed to prove either collaboration or retaliation by the Government.

## IV. CONCLUSION

Therefore, I respectfully recommend that Defendant's Motion to Dismiss Indictment and/or Suppress Evidence **(Doc. 13) be DENIED.**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 16th day of August, 2019.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa